MOSES L. NOYES AND ANOTHER *vs*. THE NEW HAVEN, NEW LONDON AND STONINGTON RAILROAD COMPANY.

A partner has power to compromise and discharge a claim of the partnership against a third party.

And a payment to a partner is a good payment to the firm, although the other partner or partners had given notice to the debtor not to pay to such partner. The debtor has a right to pay his debt, and can not be affected by the disagreement of the partners as to who shall receive the money. Any partner wishing to prevent such payment must seek the aid of a court of chancery.

Whether the power of a partner to bind the partnership by an *executory* contract, would not be affected by a notice from the other partners revoking his authority : Quere.

N, one of two partners to whom a large sum was due from a railroad company on an unsettled account, gave notice to the company not to make a settlement unless both partners were present. E, the other partner, was seeking to obtain the money due for the purpose of applying it to his own private use and of defrauding N ; and the railroad company, knowing of this intention and for the purpose of aiding him in accomplishing it, as well as for the purpose of getting a more favorable settlement of the account, made a secret settlement with E, and paid him a sum agreed to by him as the balance due, and took a discharge of the partnership debt. N had no knowledge of the settlement till E had left the

state with the money, when he gave immediate notice to the company that he should not recognize the settlement. In an action of assumpsit brought in the name of the partnership against the railroad company, to recover the amount of the account, it was held, that whatever remedy *N* might have in any other form, yet that no action could be sustained in the name of the partnership to recover again the money so paid.

ASSUMPSIT, brought by the plaintiffs, partners under the name of Noyes & Eddy, to recover an amount claimed to be due them under a contract for the construction of a portion of the road of the defendants. The defendants were defaulted and the case heard in damages before *Park, J.*

On the hearing it was found by the court that the defendants, on the 31st day of December, 1857, were indebted to the plaintiffs on the contract in the sum of $18,808.38, and that of that amount the sum of $17,595.93 was on that day paid by the defendants to and received by the partner Eddy, on behalf of the plaintiffs, in full of the indebtedness.

The plaintiffs offered testimony to prove that Noyes had notified the defendants not to pay the balance due them to Eddy, and that the payment was made in disregard of the prohibition, and claimed that it was therefore not available to the defendants in their defense, but the court held that Eddy had a right as partner to receive payment of the money due the plaintiffs notwithstanding the dissent of Noyes.

The plaintiffs further insisted that the defendants were guilty of fraud upon Noyes in the means taken to accomplish a settlement with Eddy, and upon the evidence introduced by them in support of this claim the court found as follows: When the plaintiffs' copartnership was formed Eddy was in ill health, and had been so for a considerable period of time, and in consequence it was arranged between them that Eddy should engage a proper man to perform all the active duties of a partner in his stead, and should be relieved from the responsibility of attending personally to the work. Such a person was employed, and this arrangement was carried out during the continuance of the work. The partners entered into the contract with the company and commenced work under their contract in the latter part of the month of July, 1857, and continued

their work until the month of December following. During all that time, all the transactions between the company and the copartnership were carried on through Noyes. The monthly estimates of work done on the contract were delivered to him and the monthly payments were made to him. On two occasions the president of the company passed by Eddy, when at hand, and procuring a horse and carriage rode to Stonington, some twelve miles distant, for the purpose of paying the monthly estimates to Noyes. When the October estimate was paid in November, it was arranged between the defendants and the plaintiffs that the contract then subsisting between them should be given up, and the defendants agreed to pay for all the work performed according to the terms of the contract. The work substantially ceased on the 2d day of December, 1857, when the chief engineer with his assistants commenced making up the final estimates of work done. Noyes at this time was out of business, and was waiting at Stonington for the final estimate to be completed. It was completed on the 30th of December, and for some time before Noyes had made daily inquiries of some of the corps of engineers when it would be finished. He was told repeatedly, when making such inquiry, that the final estimate would be given to him when completed; and the chief engineer so informed him but a few days before its completion. Eddy during this time paid no attention whatever to the final estimate. He spent part of the time at New London, and part of the time in the city of New York. When the arrangement was made to give up the contract Noyes notified the president of the company that all parties in interest must be present when the settlement should take place; and afterwards, at Stonington, he requested the president not to make a settlement or pay any money on account of the partnership unless all parties in interest were present, and the president assented to this. Sometime previous to the settlement, the president of the company entered into a secret negotiation with Eddy to settle with him alone, in the absence of Noyes, and it ended in an agreement to do so. Thereupon the chief engineer was informed by the company of the fact, and was instructed to keep

the matter secret from Noyes. The engineer obeyed his instructions, and Noyes was deceived in relation to the time when the final estimate would be completed, and knew nothing whatever of the contemplated settlement with Eddy until after it had taken place and Eddy had left the state. The final estimate was completed about twelve o'clock at night, on the 30th of December, and the chief engineer remained in his office at Stonington, where he resided, until it was finished. At that time it was arranged by the company to meet Eddy at New London the next day for the purpose of a settlement, and Eddy was telegraphed to at New York by the company to be there for the purpose. The parties met in New London according to the arrangement and a settlement took place, and the company paid Eddy the sum of $17,595.93 on account of the partnership, and received from him a full discharge of all the partnership claims. When the arrangement was made in November to give up the contract, the firm had certain property along the line of the road which they negotiated a sale of to the company for the sum of $2,500. In the settlement Eddy agreed to take $1,700 for the property, on the representation of the chief engineer that it was not worth more than that sum. The final estimate presented at the settlement consisted merely in the gross amount of the work done and the sums of money that had been paid. Eddy knew but little concerning the matter, and it did not appear that he took any measures to inform himself, or had anything to say in the settlement in relation thereto. When the parties met at New London, the company being apprehensive that Noyes by some means should ascertain what was being done, and should come to New London before the settlement should be completed, directed two men to watch for him. One was stationed at the ferry across which Noyes must pass, should he come from Stonington where he then was, and where the company knew he was, with instructions that should he come immediate information should be given to them. The other was stationed on the steps of the City Hotel, while the transaction took place, for the like purpose and with similar instructions. After the settlement had taken place it was proposed

by some of the parties concerned therein to spend the night at New London, but the fear was expressed by others lest Noyes might come, and so it was thought best for Eddy to leave that night for New York, which he accordingly did. A part of the amount paid by the company was in checks upon one of the banks in the city of New Haven, payable within a few days, which checks Eddy before leaving procured to be discounted in New London after the banks had been closed for the day. Of the amount received by Eddy, about $100 came indirectly into the hands of Noyes through a third person, and the balance Eddy, after paying $7,477.20 to creditors of the firm, appropriated to his own use. As soon as Noyes heard of the settlement he notified the company that he should not hold himself bound by the settlement, and charged them with fraud, and declared that he should call them to a legal account for the transaction. When he received the $100, he received it merely to apply on the account with the company, and did not intend to ratify, and did not ratify, the settlement made by Eddy with the company. The greater part of the $7,477.20 paid by Eddy had been attached in the hands of the company by process of foreign attachment, and the company required in the settlement that these debts should be paid, and the remainder of the sum was not paid by Eddy until after he was compelled to do so by sundry other creditors. A few days after the settlement Eddy remarked to a friend that when Noyes should become apprised of what had taken place there would be " a high old time." Habits of intemperance that had been formed by Eddy increased upon him after the settlement, and not long thereafter he became insane, and finally died in a hospital in July following, during the pendency of the present suit.

On these facts and other evidence not detailed, the court was fully satisfied, and consequently found, that Eddy in the settlement intended to defraud Noyes; that he intended to get all the money due the firm from the company into his own hands, to apply the same to his own individual use, and never intended to account for the same with Noyes; and that the transaction was carried on from the first with such pur-

pose. The court also found that the company knew what was the purpose of Eddy from the commencement of the transaction to its close, and entered into the arrangement, and carried on their part of the transaction, partly under the expectation of a more favorable settlement with Eddy than with Noyes, and partly to assist Eddy in getting possession of all the money due the firm, that he might apply the same to his own individual use; and consequently, that the company was guilty of fraud on the plaintiff Noyes. The court also found that Eddy, at the time of the settlement, was comparatively destitute of attachable property, and that this fact was likewise known to the company.

The defendants claimed that the law was so upon the facts found, that even if the court should find the fraudulent intent imputed by the plaintiffs, the defendants were nevertheless entitled to the benefit of the application of the payment of $17,595.93, and that no judgment could be rendered against them for any greater amount than the balance of the sum found due at the time of the settlement, after deducting therefrom the sum of $17,595.93. But the court overruled the claim, and decided that the settlement with Eddy was null and void so far as Noyes was concerned, but good so far as Eddy was concerned, and that the defendants were only entitled to the credit of such sums as appeared to have been actually applied by Eddy to the payment of creditors of the firm; and thereupon, and without finding what was the actual state of the accounts between Eddy and Noyes, no evidence having been introduced on that subject, rendered judgment for the plaintiffs for the balance left after deducting the $7,477.20 applied by Eddy to the payment of creditors of the firm, and the $100 received by Noyes. The defendants thereupon moved for a new trial.

*Baldwin* and *Halsey*, with whom were *Lippitt*, *Park* and *Pratt*, in support of the motion.

1. Eddy had a right as partner to receive payment of the money due the plaintiffs, notwithstanding the dissent of Noyes, there being nothing in the case to show that the power and

authority of the partners was not equal in the matter. When two have a joint personal interest, the release of one binds the other. A release by one is a release by all. Each partner possesses the power to collect debts, receive payment and give a discharge. *Ruddock's case*, 6 Coke, 25. *Stead* v. *Salt*, 3 Bing., 101. *Pierson* v. *Hooker*, 3 Johns., 68. *Bruen* v. *Marquand*, 17 id., 58. *McBride* v. *Hagan*, 1 Wend., 326. *Wells* v. *Evans*, 20 id., 251. *Salmon* v. *Davis*, 4 Binney, 375. *Smith* v. *Stone*, 4 Gill & Johns., 310. Coll. on Part., § 468. Story on Part., § 115. And this even if insolvent. *Major* v. *Hawks*, 12 Ill., 298. This right does not rest merely on the ground of presumed agency, but upon the interest which each partner has in the whole effects, and upon the necessities of the case. Therefore, when the act is to receive payment and *discharge* a claim due the firm, one may act against the dissent of the other, though in contracts to *charge* the firm, the rule may be different. 1 Parsons on Cont., 151, and authorities *supra*.

2. As Eddy had full authority as partner to receive payment of money due the firm, judgment should have been rendered for the plaintiffs for the unpaid balance only;—because, 1st. In suits by partners, all must join as plaintiffs. Story on Part., §§ 234, 235, 236. 2d. Whatever is a good bar or defense as to one partner, is equally so as to all. Story on Part., ib. *Austin* v. *Hall*, 13 Johns., 286. And to the same point the cases above cited. 3d. The equity of a defrauded partner can not therefore be worked out in a court of law, where he must join his fraudulent partners with him as plaintiffs, for the payment, being good as to one of the plaintiffs, bars the joint action of both. Story on Part., §§ 236, 238. Coll. on Part., §§ 643, 455, note to § 423. *Homer* v. *Wood*, 11 Cush., 62. *Jones* v. *Yates*, 9 B. & C., 532. *Richmond* v. *Heapy*, 1 Stark., 202. *Wallace* v. *Kelsall*, 7 Mees. & Wels., 264. *Greeley* v. *Wyeth*, 10 N. Hamp., 15. *Gordon* v. *Ellis*, 7 Mann. & Grang., 607. The court held that the payment was binding upon Eddy, but not upon Noyes, and yet rendered judgment for Noyes and Eddy jointly to recover, as if no payment had been made. The plaintiffs

have to allege and rely upon the fraud of one of them to defeat the application of the payment. The principle stated therefore applies. 4th. The remedy of a defrauded partner is by an action on the case or petition in chancery. *Homer* v. *Wood*, 11 Cush., 62. *Longman* v. *Pole*, 1 Mood. & Malk., 223. Coll. on Part., § 455. To permit the plaintiffs to recover the money thus paid to one of them, leads to this absurd result—that the same parties receive double payment of the same debt. The remedies of the law are adapted to the purposes of justice in such manner as not to work gross injustice in the attainment of that object.

3. With regard to the motive of the defendants in settling with Eddy:—Nothing is found to show that, as between Eddy and Noyes, Eddy was not entitled to keep the money. But suppose there was, and the officers of the company paid the money with the fraudulent motive imputed, can a corporation have a fraudulent *motive* imputed to it in the performance of a *legal duty*, the payment of a debt? Its officers may have been privy to the fraudulent motives of Eddy, and desired to aid him in defrauding his partner; but that was no part of the act of the company. The company were not chargeable with their motives, which were entirely collateral to the act done in its behalf. The company was not *benefited*. It could neither gain nor lose by the use Eddy made of the money. An agent in making a *contract* for a corporation, may involve them in the consequences of a fraud practiced upon the other party; but an agent who *does an act* which it is the *duty* of his principal to do, and nothing more, can not make the principal responsible for the motives, other than the *legal duty* of his principal, which may influence him in its performance.

*C. Chapman* and *E. Perkins*, with whom were *Palmer* and *Trumbull*, contra.

1. The only ground on which it can be claimed that a new trial should be granted, is that the payment of the $17,595 was a good and valid payment to the copartnership. If it was so, it would entirely bar, *pro tanto*, not only this action, but any action which might be instituted in the name of the

firm or of either partner. The conclusive answer to every such action would be, that the debt for which the suit is brought has so far been paid. If, however, it was not a payment for the benefit of the copartnership, but a payment to Eddy for his individual use, and for the purpose of enabling him to defraud the partnership, which is a fact most explicitly found, then it was not, either in fact or in law, a payment to the partnership, and does not operate to extinguish so far the debt due to the partnership. It is absurd to call a payment, made expressly for the purpose of aiding in a fraud on a partnership, a payment to the partnership. Payment is always a question of intention. Here it is expressly found that Eddy did not receive this money for the benefit of the partnership, but with the intent to apply it to his own individual use in fraud of the partnership, and that the defendants paid it to him with full knowledge of this intent and for the purpose of aiding him in carrying it out. If Eddy had found this money in the street and had refused to give it up on demand, or the defendants had lent it to him and he had refused to repay it, the claim could not be set off against the claim of the partnership; and yet it would be as true as it is here, that by a recovery on the part of the partnership Eddy would be receiving the money twice over. The transaction in each of the cases supposed would not be more entirely that of Eddy as an individual, than the transaction in question, in which it is found that the money was paid and received wholly for Eddy's individual use.

It is said, however, that the authorities are decisive against an action at law in such a case in the name of the firm, and that the only remedy of Noyes is by a bill in equity against Eddy and the defendants. And the case of *Jones* v. *Yates*, 9 Barn. & Cress., 532, is relied upon as a leading case upon this point. But that case is clearly distinguishable from the present, in the fact that the misconduct of the partner was itself the ground of the action, not, as here, the ground of defense. Lord Tenterden there says that there is great inconsistency in allowing a partner to recover on the ground of his own misconduct. We seek here to recover on the ground of our just

claim against the defendants upon their contract. The misconduct of Eddy forms no part of our case. It comes into the case for the first time when the defendants attempt to set it up as a ground of defense. The supreme court of Pennsylvania, in *Purdy* v. *Powers*, 6 Penn. S. R., 492, say, "The fraudulent act of one partner does not affect the title of the partnership." The case of *Homer* v. *Wood*, 11 Cush., 62, cited on the other side, turned upon the point that the defendant was not implicated in the fraud of the partner. The court simply decide that, *in the absence of fraud known to the debtor*, either partner has the power to discharge a partnership debt. In the case of *Pierson* v. *Hooker*, 3 Johns., 68, there was no fraud in any of the parties. So in those of *Stead* v. *Salt*, 3 Bing., 101, *Bruen* v. *Marquand*, 17 Johns., 58, *McBride* v. *Hagan*, 1 Wend., 326, and *Salmon* v. *Davis*, 4 Binn., 375. In the cases of *Wallace* v. *Kelsall*, 7 Mees. & Wels., 264, and *Richmond* v. *Heapy*, 1 Stark., 202, there was not only no question of fraud, but that circumstance is specially alluded to as an important one in each case. In *Longman* v. *Pole*, 1 Mood. & Malk., 223, it was held that if a person colludes with one partner to defraud the others, a joint action at law can be maintained by the other partners against the person so colluding. In *Greeley* v. *Wyeth*, 10 N. Hamp., 18, Parker, C. J., seems to recognize the effect of a fraud as we claim it. So in *Gordon* v. *Ellis*, 7 Mann. & Grang., 607, Tindall, C. J., says, on page 621, "There is no allegation in the plea of any collusion between Gordon and the defendants." It will be found that, in all the cases cited on the other side, the element of fraud, so prominent in this case, was wanting, and that in many of them this absence of fraud was the turning point of the case. These authorities, therefore, have no application where the defendant has not acted in good faith, or where the fraud of the partner is not itself the ground of the action. Here our cause of action is wholly independent of the fraud, and is admitted to be a valid one unless defeated by the fraud of the defendants themselves. So far from this fraud constituting a bar to our action, the defendants themselves, upon the best settled principles, should not be allowed to avail

themselves of it as a defense. It is a maxim of universal acceptation in the law, that no man shall take advantage of his own wrong; and the defendants can be allowed to avail themselves of this defense only in violation of this important rule.

The authorities in support of our general position are numerous. *Leavitt* v. *Peck*, 3 Conn., 124. *Tanner* v. *Hall*, 1 Penn. S. R., 417. *Dobb* v. *Halsey*, 16 Johns., 34. *Gram* v. *Cadwell*, 5 Cowen, 489. *Everinghim* v. *Ensworth*, 7 Wend., 326. *Mercien* v. *Andrus*, 10 id., 461. *Burwell* v. *Springfield*, 15 Ala., 273. *Noble* v. *McClintock*, 2 Watts & Serg., 152. *Minor* v. *Gaw*, 11 Smedes & Marsh., 322. *Skiafe* v. *Jackson*, 3 Barn. & Cress., 421. *Farrar* v. *Hutchinson*, 9 Adol. & El., 641. *Atlantic Bank* v. *Merchants' Bank*, 9 Am. Law Reg., 241. 1 Am. Lead. Cases, 452. 1 Parsons on Cont., 154.

That a bill in equity is not the proper remedy, is manifest from the fact that a payment of the debt will be as good a defense in equity as at law. If the transaction was a fraudulent one, then no effect should be given to it, either in law or equity, for fraud vitiates a transaction equally in both, and if it was a valid one, it should be sustained in equity as well as at law. The only effect of a bill in equity would be to compel Eddy to account for the money. But a judgment against him or his representatives would be of no value. Besides, if this is the only remedy, then it becomes necessary in every such case that the partnership should be dissolved and the entire partnership account settled, as, without such settlement, it could not be ascertained what part of the amount belonged to the defrauded partner, and what should be the amount of the recovery against the debtor, if there could be any recovery against him.

ELLSWORTH, J. We are all satisfied that the defendants are entitled to a new trial.

We can entertain no doubt with regard to the legal character and effect of the payment of the $17,595.93 by the defendants to Eddy, one of the partners, and one of the plaintiffs in this

action. It must, in our judgment, put an end to the right of the plaintiffs to recover that sum again in this suit.

The superior court found, that this sum was paid to Eddy and received by him in *satisfaction of the debt now in suit,* though something less than the amount actually due; and the judge properly held that Eddy had a right to receive it for that purpose, and that the settlement was good and obligatory upon him, though upon what ground he could regard it as null and void as to Noyes it is not easy to perceive.

On these premises it would seem to be impossible that Eddy and Noyes can unite in suing for this sum already in the hands of the former; and this attempt to force a second payment will be seen to be entirely absurd if we suppose that Eddy had been the survivor in the action instead of Noyes, while the same rule would of course prevail in either case.

The difficulty of maintaining a joint action upon the facts found below is so. apparent that the plaintiffs' counsel are compelled to assert, and they do assert, that the payment of the $17,595.93, was not in fact a payment upon the partnership debt at all, but a transaction entirely foreign to that debt; as perhaps a loan to Eddy, or a delivery of so much money to him for some unknown purpose. Such a view of the transaction we can by no means concur in. It is a palpable denial of the finding of the judge, which is that Eddy received the money to apply, and in fact did apply it, in payment and satisfaction of the debt. Not to insist, as perhaps might properly be done, that the entire debt of $18,808.38 was released by the compromise, (for one partner could do this,) we may at least say that the two partners can recover no more than the difference between that sum and the sum paid, and for that it is agreed by the defendants that the verdict may stand if the rest is remitted on the record.

Now let us inquire on what ground it is that the plaintiffs claim that the money received by Eddy was not a payment and satisfaction of the partnership debt when it had been agreed that it should be. It is to be observed that the state of the company account between Noyes and Eddy no where appears upon the papers. That fact seems to have been

thought quite immaterial upon the trial of the cause, as indeed it would be in a suit by partners against a third person to recover an unpaid partnership debt. Hence we have no means of knowing that Eddy, by receiving the money, whether to apply on his own debt against the company, or to pay other creditors of the company, or to reimburse himself for his capital advanced, has done his partner any injustice whatever. Whatever may have been threatened, we do not see that any injustice has actually been perpetrated on Noyes, nor can we know it, until the account is settled between them, or the state of the account agreed upon.

But the counsel of Mr. Noyes claim it to be an important fact that their client notified the president of the railroad company to make no settlement unless both partners were present, and that the president agreed to this. The counsel are not entirely agreed whether this notice meant that the defendants should not settle with certain factorizing creditors without the contractors were present, or that one partner should not be paid unless the other was present and agreed to it. Be this as it may, it is not found that Eddy assented to the arrangement or in fact had notice of it, and he certainly had power as partner to settle with their debtor and receive payment. He was not affected by what Noyes had done, for, if so, then he could have stopped payment to Noyes, and the defendants could not then have paid their debt, or made a legal tender of it to either. This would be absurd. The defendants had nothing to do with the plaintiffs' quarrels. A court of equity could, if necessary, in a bill with proper averments, have interposed; but the request of Noyes had no legal effect. Without more than appears in this case the defendants could pay either of the partners, for they constituted but one person. The circumstance that the president promised not to pay Eddy separately, if that be the construction of the request, amounts to nothing against Eddy. If the president has broken a legal promise to the injury of Noyes, the remedy is against him, but it is not enough to defeat the payment made to the partner Eddy.

It is urged further, that Eddy's purpose in affecting a settle-

ment was to get the money into his own hands and not account for it, and that the defendants were cognizant of this, and yet settled with him, partly because they could settle with him more favorably than with both, and partly to enable him to put the money into his own pocket. But Eddy is accountable for it at all events as a partner, and we do not know but that every dollar of it was justly due to him, or to the partnership creditors who perhaps are urging their claims against him or his estate. We can not see that a fraud has been accomplished to the injury of the partnership, or even of Mr. Noyes, although there has been a breach of the confidence which belongs properly to the partnership relation, and in ordinary cases is inseparable from it; and even if a fraud has been committed by the company on Noyes, it would not be a fraud on Eddy, or on the partnership as such, and no action could be maintained in the name of the partnership for it.

We have not thought it important to discuss the law of the cases cited on the argument. It seems to us to agree with the views which we have expressed as the result of our own reflections. We consider the rule to be this—that wherever one partner settles with a debtor of the company and receives payment of the debt, he can not retain the money and repudiate the settlement; nor can he, either alone or in union with his partner, recover the debt a second time.

It may be proper, in view of some of the cases cited, that we remark that there is a wide difference between joint plaintiffs and joint defendants in cases involving the acts of one partner, such as settlements, and payments by or to him in the partnership business. In the first each plaintiff must have a perfect cause of action, as much so as if he had sued alone; in the latter each will stand on his own personal merits or individual defense.

Nor have we gone into the question whether the authority of a partner to bind his co-partner within the scope of the partnership, may not be revoked or restricted as to *executory* contracts, with notice to the party dealing with him to that effect. We are inclined to think that it may, and that it was so held in the case of *Leavitt* v. *Peck*, 3 Conn., 124. But the payment

of an existing debt to one of the partners, notwithstanding the request of the other that it should not be so paid, is a very different matter. Debtors have rights of their own, and they are not dependent upon the continuance of partnership authority for the discharge of their duties. Unless there has been an assignment with notice, or an injunction from chancery, they may treat each partner of the firm to which they are indebted as representing the whole company, however numerous.

We advise a new trial, unless the amount of the payment in question shall be remitted on the record.

In this opinion the other judges concurred.