DODSON et al., Appellants, v. WEBB et al., Respondents

(50 N. W.2d 92)

(File No. 9245. Opinion filed November 20, 1951)
Rehearing denied December 11, 1951

168

**G. F. Johnson,** Gregory, and **Stephens & Riter,** Pierre, for Plaintiffs and Appellants.

**Martens, Goldsmith & May,** Pierre, for Defendants and Respondents.

SMITH, J.   This is an action brought pursuant to SDC 37.15 to determine adverse claims to real estate.   Whether the undisputed evidence introduced by the plaintiffs Dodson and Nelson establishes a cause of action is the question presented by this appeal.   At the close of plaintiffs' case motions for judgment were made by the defendent, the Ohio National Life Insurance Company and by the defendants Webb.   Both motions were granted and judgment was accordingly entered.   The appeal is from the judgment entered in favor of the defendants Webb.

The evidence of plaintiffs establishes the following facts. For the purpose of blocking low cost South Dakota lands into ranches for sale, the plaintiffs, Dodson and Nelson of Winner, South Dakota, formed a partnership with W. H. Ingerton of Amarillo, Texas.   The arrangement was that Ingerton would supply the capital, the plaintiffs would attend to the purchases, and profits or losses were to be shared one-half by Ingerton and one-half by the plaintiffs.   Under this arrangement approximately 20,000 acres of Stanley County land, blocked in two separate ranches, were acquired, and title thereto was placed of record in the name of Ingerton. In the fall of 1948 Ingerton, as an individual, executed and delivered two separate contracts wherein he agreed to convey and warrant title to the two ranches to the Webbs for an aggregate consideration of about $90,000.   In connection with these contracts, which were made in Texas, the Webbs

deposited $10,000 in escrow in a Texas bank. Photostatic copies of these contracts were subsequently forwarded to plaintiffs. Their only complaint was that the price was not "too hot." Thereafter, without the knowledge of plaintiffs, Ingerton and Webbs entered into supplemental agreements under which the escrow deposit above mentioned and a substantial sum of additional cash were paid to Ingerton, and Ingerton placed a deed to about 16,000 acres in escrow to be delivered to Webbs in the event he should fail to perform the original contracts. As a part of this arrangement Webbs secured a $2500 reduction of the purchase price. Ingerton failed to report either the payments or the change in the contracts to his partners.

Some months later the plaintiffs learned through a third person that Webbs had paid substantial sums on the purchase price to Ingerton and thereupon they caused to be mailed to each of the Webbs a notice reading as follows: "I understand that you and other members of your family have purchased from W. R. Ingerton some 20,000 acres of Stanley County land. I am writing to you for the purpose of informing you that Ivan Nelson and Ike Dodson claim to be partners in this land with Mr. Ingerton and there appears that there may be some difficulty between Mr. Ingerton and Dodson and Nelson over this property. We hope, and intend to use every effort to prevent this dispute from materializing and getting into court, but we can not overlook the possibility that legal action may be necessary to straighten things out. In the meantime, we are taking the position that any further payments made upon said land without the approval of Dodson and Nelson will be subject to the rights of my clients. Sincerely, G. F. Johnson." At the same time the plaintiffs caused to be mailed to an attorney for Webbs a notice of similar import.

Not until these notices were received did the Webbs have any knowledge of the interest of the partnership in th ranches they were under contract to purchase from Ingerton. When they questioned Ingerton, he denied that plaintiffs had an interest in this land.

Some two weeks subsequent to the date the above described notices were mailed, and after Ingerton had threat-

ened to call the deal off and bring an action against them, the Webbs made settlement according to the terms of their several contracts, by assuming a mortgage of record, and paying Ingerton an additional sum in cash of $30,301.50. Ingerton thereupon executed and delivered to Webbs warranty deeds describing the ranches.

As we have indicated, the trial court held these facts were insufficient to establish that plaintiffs have any right, title, interest or equity in the described property.

■ The uniform partnersip act contains the following provisions:

"Every partner is an agent of the partnership for the purpose of its business, and the act of every partner, including the execution in the partnership name of any instrument, for apparently carrying on in the usual way the business of the partnership of which he is a member binds the partnership, unless the partner so acting has in fact no authority to to act for the partnership in the particular matter, and the person with whom he is dealing has knowldege of the fact that he has no such authority;" SDC 49.0301(1).

"No act of a partner in contravention of a restriction on authority shall bind the partnership to persons having knowledge of the restriction." SDC 49.0301(4).

"Where title to real property is in the name of one or more but not all the partners, and the record does not disclose the right of the partnership, the partners in whose name the title stands may convey title to such property, but the partnership may recover such property if the partners' act does not bind the partnership under the provisions of paragraph one (1) of section 49.0301, unless the purchaser or his assignee, is a holder for value, without knowledge;" SDC 49.0302(3).

In recognition of this statutory authority of a partner, and of the fact that they remained silent after Ingerton had disclosed to them that he had contracted with the Webbs as an individual, the plaintiffs present their contentions here under the concession that all Ingerton did before Webbs received the notice quoted supra was binding on the partnership, and on them. The principal contention of plaintiffs is

that the Webbs were apprised by the quoted notice of the restriction they had placed upon the authority of Ingerton to act for the partnership, and hence, to the extent of the $30,301.50 subsequently paid on the purchase price, the Webbs hold title subject to their rights as tenants in partnership. Cf. SDC 49.0502. They seek to add substance to their claims by asserting that the Webbs acted in bad faith and fraudulently in making final settlement with Ingerton. Althrough the evidence on which they predicate their claim of fraud has not been included in the forgoing statement of the facts, it has received our very careful consideration. Because we are of the opinion that the evidence is wholly insufficient to sustain a finding that the Webbs acted in bad faith or fraudulently, we dismiss that phase of plaintiffs' contention from further consideration.

As authority in support of their principal contention the plaintiffs refer us to SDC 49.0401(8) reading, "Any difference arising as to ordinary matters connected with the partnership business may be decided by a majority of the partners; but no act in contravention of any agreement between the partners may be done rightfully without the consent of all the partners", and to the text of 68 C.J.S., Partnership, § 142, reading, "A majority of the partners, if they act fairly and in good faith and within the scope of the partnership business, may bind a minority by deciding questions relating to the conduct of the partnership business" and pointing to a provision of the act reading, "The law of agency shall apply under this part", SDC 49.0104(3), they emphasize the text of Restatement, Agency, § 310, as follows: "An undisclosed principal upon whose account an agent has acted within his power to bind the principal in making a contract, unless excluded by its terms, may require the other party to render performance to him instead of to the agent, except in the case of personal services or where performance to the principal would subject the other to a substantially different liability from that contemplated", and the comment thereunder reading, "If there is doubt as to the existence of the agency or the respective rights to performance, the other party may interplead the principal and agent."

From this background the plaintiffs argue that the final

payments made to Ingerton do not bind the partnership because theretofore, acting in the utmost good faith, the majority of the partners had restricted his authority to act for the partnership and had notified Webbs of that fact.

It is our opinion that because of the rights with which the Webbs were invested by the above-described contracts, the cited authorities should not be permitted to control our decision.

■ In the absence of special circumstances impelling a different view, it has been held that notice to an obligor of a partnership not to make payment to one of the partners does not prevent such a payment from being effective against all of the partners. Argenti v. Brannan, 5 Cal. 351; Noyes v. New Haven, N. L. & S. R. Co., 30 Conn. 1; Harding v. Parshall, 56 Ill. 219; and Lodewick v. Cutting,. 121 Misc. 348, 201 N.Y.S. 276. Cf. Annotation 142 A.L.R. 382. In the instant case we are confronted, not only with the fact that the payment plaintiffs assail was actually received by one of those between whom there exists a community of interest in the firm, but by the fact that it was made to that member of the firm pursuant to an express provision of the firm's contracts that it should so be made, and the further important fact that it was made to procure from Ingerton the conveyance and warranty for which Webbs had contracted, and in part consideration of which they had previously paid Ingerton $28,500.

■ As indicated by the foregoing, for the purposes of our decision, we think we must regard plaintiffs as parties to the contracts and to all that was done prior to the moment Webbs received notice of plaintiffs' interest and of their demand that further payments to Ingerton be withheld. Viewed in that aspect, the facts reveal that Webbs did nothing thereafter except that which they had gained a right to do under contracts to which plaintiffs are deemed to be parties. It seems obvious that SDC 49.0401(8) quoted, supra, did not invest the majority members of a partnership with power to alter the contractual rights of those to whom it is obligated. The rights of the Webbs and the obligations of Ingerton and the plaintiffs under these contracts were not changed by the notice plaintiffs served on Webbs.

■ It is our opinion that plaintiffs were without legal or equitable right to demand that Webbs assume the risk incident to withholding performance of these contracts with Ingerton. We are of the further opinion, that as against the Webbs, in the circumstances, the plaintiffs should not be heard to question Ingerton's authority to do that which he was obligated to do under the terms of these contracts which were binding on the plaintiffs. Therefore, we conclude the trial court did not err in holding that the plaintiffs were without right, title, interest or equity in the described property.

In support of the judgment of the trial court the defendants have contended that plaintiffs as individuals have no such interest in specific partnership property as will support an action under SDC 37.15. In view of the foregoing conclusions, we need not consider that contention.

The judgment of the trial court is affirmed.