## Wells & Spring vs. Evans and others.

A *release* executed by an attorney in his own name, and *not in the name of his principal* by himself as attorney, is not obligatory upon the principal; and *parol* proof is inadmissible to show an adoption of the act, by the principal receiving the *consideration* of the release.

*It seems,* however, that though the acceptance of the consideration by the principal may not be shown to give validity to the release, yet that evidence of the receipt of the money is admissible to show payment *in whole or in part* of the demand of the principal.

Although one partner cannot bind his copartner by *seal,* where the effect of the instrument thus executed is to *charge* the firm, yet it is competent to him, by an instrument *under seal,* to authorize a third person to *discharge* a debt due to the firm.

All the partners of a firm are bound by a note made by one of the partners in the name of the firm *for his individual benefit,* even though it be *fraudulently* put into circulation as it respects himself, if the note before maturity comes into the hands of a *bona fide* holder.

This was an action of *assumpsit,* tried at the New-York circuit in May, 1837, before the Hon. Ogden Edwards, one of the circuit judges.

The plaintiffs are *endorsees* of a promissory note for $3,000, made by the defendants to Samuel S. Hill, dated 27th July, 1835,

payable twelve months after date.  The defendants were partners in trade, and the note was signed in the partnership name, " Thomas Evans & Sons," by *Thomas Evans,* the senior partner.   The defence set up was the following: On the 11th December, 1835, the plaintiffs united with several others, merchants of the city of New-York,  in excuting a *power of attorney* to Charles B. Grannis and Henry M. Mead, authorizing them to demand and receive from *Hill,* the endorser of the note in question, all sum and sums of money due, owing and payable to them, and, on receipt of the same, to execute acquittances and discharges.   This power of attorney was executed by *Marcus Spring,* one of the plaintiffs, by affixing thereto his own name and the name of his firm, thus: " Marcus Spring for Wells & Spring," and adding to the signature a *seal.*  This power of attorney was received in evidence, though objected to by the plaintiffs' counsel.   The defendants next offered in evidence an instrument in writing, executed by Grannis & Mead, bearing date 12th December, 1835, whereby they acknowledge to have received of *Hill,* the endorser of the above note, $9,000 *in money ;* in consideration of which, they promise to surrender to Hill, without delay, such notes as had been given to him by different individuals *for his accommodation,* and which had been endorsed by him, *in lieu* of which, they stated they had received his individual notes ; also, they promised to discontinue all suits upon such notes, and to refrain from causing any costs to be made on the same.   They also stated that they were to receive, *whenever they should require the same,* all transfers of real estate made by *Hill,* and particularly a transfer made  to H. Mather,  " for the payment of the respective notes."   This instrument was executed thus: " Cha's B. Grannis, l. s. Henry M. Mead, l. s." Its admission in evidence was objected to, and rejected by the judge.   The defendants also offered in evidence the transfer to Mather, referred to in the instrument executed by Grannis & Mead.  It was a *deed in trust,* executed by *Hill* to *Henry Mather,* bearing date 24th October, 1835, conveying sundry parcels of land, and was accompanied by a *declaration of trust,* executed by *Hill* and *Mather,* specifying the objects of the

Wells *v.* Evans.

conveyance ; which were, that Mather should offer certain parcels of the property to certain specified creditors in payment o their demands ; and on their refusal to accept the same to *sell* or mortgage the property, and appropriate the proceeds to the payment of the debts. Among others, certain parcels of the property were appropriated to the payment of the *note of* $3,000 *of Thomas Evans & Sons.* The defendant, in connection with those instruments, offered to prove by *parol*, that the deed from Hill to Mather was the *transfer* referred to in the instrument executed by Grannis & Mead ; that the note in controversy was an *accommodation note*, given by the defendants to Hill without consideration, and was the identical note specified in the declaration of trust ; and that *Mather* had always been ready and willing to execute to Grannis & Mead a conveyance of the real estate specified in the deed of trust, but had never been requested so to do : all which evidence was objected to by the plaintiffs, and rejected by the judge. The defendants further *offered to prove* that the instrument executed by Grannis & Mead was executed under and in pursuance of the power of attorney given to them, and *that the plaintiffs received their proportion of the* $9,000 specified in the instrument : which evidence was objected to by the plaintiffs' counsel, *so far* as the same tended to prove that the instrument executed by Grannis & Mead *was obligatory upon the plaintiffs as a release.* The objection was sustained, and the evidence rejected; the judge, however, ruled that if the defendants desired to prove the *payment of any money* to the plaintiffs as a credit or partial payment, or that the plaintiffs *had received a conveyance of land*, or any other thing, they were at liberty to do so ; and that, for that purpose, but not for the purpose with which it was offered by the defendants, the *deed to Mather* and the *declaration of trust* were admissible in evidence. Under which decision, however, no evidence was given by the defendants. The defendants finally offered to prove that the note in question was made by *Thomas Evans*, one of the partners of the firm of *Thomas Evans & Sons*, in the name of the firm, *for his individual benefit* ; that it was made in *blank*, as it respected the

amount, and placed in the hands of *Hill* for the purpose of borrowing money thereon, for the individual benefit of *Thomas Evans*, and that Hill had no authority to fill the blank, or issue the note for any other purpose; and that, in violation of the trust confided in him, he passed the note to the plaintiffs for *goods purchased of them for his own benefit*, without the knowledge, consent or approbation of the defendants, or either of them ; the defendants conceded that the plaintiffs received the note from Hill, before its maturity, for goods sold by them to Hill, and that they were holders for value : which evidence was objected to by the plaintiffs, and rejected by the judge. The counsel for the defendants insisted upon the state of facts lastly offered to be proved, 1. That the note never had a legal inception or existence ; and 2. That at all events, the plaintiffs could not recover without proving that *all the defendants* had assented to the making of the note *in the name of the firm*, or that it was made for the benefit of the firm, and within the scope of the partnership business. The jury, under the direction of the judge, who charged them that the plaintiffs *were entitled to recover*, found a verdict for the plaintiffs, for the amount of the note and interest. The defendants having excepted to all the decisions of the judge, except the first, and to the charge given to the jury, now moved for a new trial.

*J. A. Collier,* for defendants.

*J. S. Bosworth,* for plaintiffs.

*By the court,* Cowen, J. The points made on the argument in favor of a new trial, consist of three : *first,* That the proof proposed was proper to make out a partial payment, with an accord and satisfaction for the residue of the debt due from Hill, the endorser of the note ; or, in other words, a composition and discharge of Hill, for whose accommodation the defendants made the note ; *secondly,* That *Thomas Evans,* one of the defendants' firm, without the knowledge or assent of his copartners, drew the note in blank, to borrow money on his own individual

account; and that Hill, without authority, perverted it to the purpose of purchasing goods of the plaintiffs for himself. Each of these grounds aim at a total bar to the action. A *third* point insists that the evidence offered and rejected, or some part of it, was at least admissable to show payment of the note for so much of the 9,000 dollars received by the plaintiffs' attorneys as was applicable to the note in question.

The difficulty of maintaining the first ground of defence, lies in the form which Grannis and Mead, the plaintiffs' attorneys, adopted for effecting the composition. It is added, also, by the plaintiffs' counsel, that *Spring* alone could not seal the power of attorney for himself and *Wells*, so as to make it binding on both; that his act is within the principle which forbids one partner to bind another by seal. That, however, is only where *the firm is sought to be charged ;* not where the object is to discharge a debt due to it. One of two joint creditors or part-ners may release for both; each in this respect having an interest with a power which has been likened to that of a co-executor. *Pierson* v. *Hooker*, 3 *Johns. R.* 68. *McBride* v. *Hagan*, 1 *Wendell*, 326, 334. As each may, in respect to his interest and power over the debt, give a release personally, there cannot be a doubt that he may delegate this power by seal to another. The judge, therefore, properly received the power of attorney in evidence, under the proposition to follow it up with a release or composition under it. The acts of the attorneys, however, were utterly inefficient. The instrument of December 12th, 1835, which, in the name of the plaintiffs, would have itself been a complete release, does not even allude to them. The clauses of receipt, composition and covenant, with the signa-tures and seals which it contains, are in the name of Grannis and Mead, without calling themselves attorneys. Taking the intended release by itself, therefore, it is merely void in respect to the plaintiffs within all the cases. The form in which attor-neys must execute this kind of power, was very clearly pointed out as long ago as *Combes'* case, 9 *Rep.* 76, 77. The rule there laid down is, " that when any one has authority as attorney to

do any act, he ought to do it in his name who gives the autho-rity ; for he appoints the attorney to be in his place, and to rep-resent his person ; and, therefore, the attorney cannot do it in his own name, nor as his proper act, but in the name and as the act of him who gave the authority." The case allows some little latitude for acts *in pais,* as where the attorney is *to surrender* or *deliver seisin.* He may then say, " I, as attorney, do the act." " But," adds the case, " if attorneys have power by writing to make leases by indenture, for years, &c. they cannot make indentures in their own names, but in the name of him who gives them warrant." The only exception there mentioned is, of a power given by will, which must of necessity be executed in the name of the attorney, because the principal is dead. This case was much considered in *Elwell* v. *Shaw,* 16 *Mass. R.* 42, and applied with a rigor far beyond what is necessary to shew the release in question a nullity. *Jonathan* Elwell, the demand-ant, executed a power of attorney to *Joshua Elwell,* to convey the premises in question. The latter conveyed by deed, reciting the power ; and proceeded : " I, the said Joshua, by virtue of the power aforesaid, in consideration, &c. do hereby bargain, &c. and convey to J. S., &c." signed " Joshua Elwell. (L. S.)" The deed was holden void. 1 *Greenl. R.* 339, *S. C.* The rule has been applied to various written contracts, both executory and executed, sealed and unsealed ; and as to bills of exchange and promissory notes, *Thomas* v. *Bishop,* 2 *Str.* 955 ; *Elmy* v. *Lye,* 15 *East,* 7 ; *Stackpole* v. *Arnold,* 11 *Mass. R.* 27 ; *Pentz* v. *Stanton,* 10 *Wendell,* 271, *and the cases there cited by Suth-erland, J.; Thatcher* v. *Dinsmore,* 5 *Mass. R.* 299 ; *Forster* v. *Fuller,* 6 *id.* 58 ; *Buffum* v. *Chadwick,* 8 *id.* 103 ; and other simple contracts, *Arfridson* v. *Ladd,* 12 *Mass. R.* 173 ; and a sealed bill of sale of a personal chattel, *Welsh* v. *Parish,* 1 *Hill's Law R.* 155. In the last case, the bill of sale ran thus : " I, Wm. Usher, jr., attorney in fact of Patrick Usher, owner of the brig Junietta, &c. grant, bargain and sell, &c." Signed " Wm. Usher, jr., attorney for Patrick Usher." (L. S.) The deed was held void after very full consideration. Mr. Justice

Johnson cites and adopts some very pertinent remarks relative to the execution of leases by attorney, made in *Bacon's Abridgment, Leases and Terms for years,* (*I.*) *pl.* 10. These are to the effect that an attorney having no interest in the land, even his adding, " *by virtue of the letter of attorney,*" will not help a lease which is made in his own name ; for, as he derived no interest from the letter of attorney, he can convey none. And though an act *in pais,* done in that form may be good, yet, as in leasing, the deed alone conveys the interest, and is the very essence of the lease, it must be made in the name of the person having the interest ; otherwise it is so merely void, that it will not estop even the attorney. *See* 4 *Bac. Abr. Phila. ed. of* 1813, *p.* 140, 141, *for all this matter much more at length.* These remarks apply with emphasis to the case in hand. The release does not even profess to be made by attorney ; yet, for the purposes of a full defence, it must be brought to enure not only as a receipt, but as a composition deed, a covenant to give up the note and to accept real estate, &c. in respect to which it is most essential that the holder of the note should be named as the party. In *Prior* v. *Coulter,* cited in 1 *Hill,* 160, the principal, by letter of attorney, authorized his agent to sell a patent right for machinery. The agent made a bill of sale or deed thus : " I, as the agent, attorney, &c." and it was signed by the agent as attorney for the principal. This was held to be a bad execution of the power, and not binding on the principal.

It is, indeed, true of these cases, as was said on the argument in reply, that they relate to contracts either executory or executed, not to releases, discharges or deeds of composition. But it is difficult to perceive any difference in principle ; and no exception is made by the cases beyond those which I have stated. It is impossible to find any general rule of law entirely filled up in the books of reports by apposite illustrations in all its bearings. The one under consideration is as nearly so as almost any other, even were we to stop with the books already cited. On farther search, however, I find that we are not without an authoritative application of the rule to a case of a mere relinquishment

of right. In *Clarke's lessee* v. *Courtney*, 5 *Peters*, 319, a power of attorney was set up to relinquish and disclaim title, as it was called, in favor of the state of Kentucky, under a statute of 1794 ; and this being executed thus : " I, the said C. L. C., attorney as aforesaid, &c., do hereby relinquish, &c. In witness whereof the said C. L. C., attorney as aforesaid, has hereunto, &c. C. L. C. (L. S.)," it was holden void within *Combe's case.* *Vide id.* 349, 350, *et seq. per Story, J. and the cases cited by him at p.* 351.

The paper set up as a release by Grannis & Mead being void on its face as a defective execution of the power, it cannot be made available by parol proof that it was intended as a good execution, or, as it is expressed by the offer, that the instrument was executed under and in pursuance of the power, and that the plaintiffs recognized the act by receiving their share of the $9,000. To such evidence, there are several clear objections. The legal effect of the instrument was to bind Grannis & Mead personally ; and evidence that it was intended to bind others would violate the rule which forbids the varying of a written instrument by proof *aliunde.* The rule was considered and applied to an instrument of this character, in *Stackpole* v. *Arnold,* 11 *Mass. R.* 27. *See also Arfridson* v. *Ladd,* 12 *id.* 173, *and Pattison* v. *Hull,* 9 *Cowen,* 747, 753. Again : admitting a parol authority or recognition to be valid so far as this deed of composition respects real estate, and that it is not within the statute of frauds, 2 *R. S.* 69, § 8, 9, *2d ed.;* 1 *Sug. Vend. Brookfield ed. of* 1836, *p.* 120 *to* 125, *and the cases there cited,* still, the authority itself wanting a seal, it would, according to *Blood* v. *Goodrich,* 9 *Wendell,* 68, be unavailable as a power for the purpose of making a deed. *Vide id.* 76, *and the cases there cited by Savage, C. J.*

It is proper to notice in this place, that the objection to the instrument executed by Grannis & Mead, which included a receipt for $9,000, in connexion with the fact that a portion of that sum falling to the plaintiffs' share was received in payment *pro tanto,* was not urged at the trial, any farther than as it went *to*

*make out a full defence* by validating the instrument ; and the judge afterwards remarked that the defendants were at liberty to prove a payment or satisfaction, partial or total, in money or by a conveyance of land. But the plaintiffs did not offer any evidence for that purpose. It is now said, for the first time in the cause, that the deed of Grannis & Mead, embodying the receipt of an agent within the scope of his authority, especially when followed by the offered proof of an acceptance of the money, would have proved at least a payment of so much ; and complaint is made that, by the ruling of the judge, the defendants were cut off from a proportionable abatement of the damages. There can be no doubt, from what appears in the case as far as it went, that the defendants might, if they would, have abated the recovery by showing what portion of the sum received should have gone in extinguishment. But it is equally true that so far from being precluded that right, the plaintiffs forbore to question it, and the judge expressly suggested that the defendants might prove a payment. Yet, it is remarkable that they neglected all proof showing an apportionment, and withheld any proposition that the $9,000, or any part of it, should be applied as payment, even under the proof already given. They virtually answered, " We go the whole defence, or none." Why that should be so, we are not to inquire. Probably they were conscious of some frailty even in this partial defence, which would be fatal to it ; and we are not to interfere on the ground that there was a possible pertinency in the evidence which the defendants themselves would not avow even under the invitation of the judge. Independent of that, it was their duty to declare the object of their evidence. It is every day's experience that evidence may be relevant for one purpose, while for another it is impertinent. 1 *Phil. Ev.* 7 ed. 169. *Per Lord Tenterden, C. J. in Taylor* v. *Williams,* 2 *Barn. & Adol.* 833.

The objection that the note was issued by Thomas Evans for his own benefit as a member of his firm, and that the blank for the sum was filled and the note negotiated without authority to use it in the purchase of goods, was not much insisted on in

argument ; and is clearly not available as against these plaintiffs who are *bona fide* holders, *Vallett*.v. *Parker*, 6 *Wendell*, 615. *Dean* v. *Hall*, 17 *Wendell*, 214, 221.

The motion for a new trial must be denied.