M. Henry Martuscbllo, J.
Defendants move pursuant to rule 113 of the Rules of Civil Practice for summary judgment dismissing the amended complaint herein on the ground that the affirmative defense pleaded thereto is sufficient as a matter of law and is founded upon facts established prima facie by documentary evidence.
The action was brought originally by Nat Freedman and Jack Kaplan as plaintiffs to recover real estate brokerage commissions claimed to be due them in the sum of $187,500; and the same came on to be tried before a jury in May, 1956. During the course of that trial it was developed that two other brokers, Joseph Drubin and Thomas Rollo, also had an interest in the commissions sought to be recovered; and thereupon a mistrial was declared so as to allow for the taking of such steps as were necessary to bring said brokers in as parties to the action. Thereafter an amended complaint was served in which Drubin was added as a plaintiff and Rollo was named as a defendant for the reason that he allegedly refused to join as a plaintiff. It was alleged in substance therein that the defendants, other than Rollo, employed the plaintiffs as real estate brokers to procure a purchaser for certain property and that the plaintiffs produced purchasers willing and able to buy the property on the terms given, but that said defendants refused to sell to the prospective purchasers and also refused to pay the commissions they had promised to pay the plaintiffs for the services thus rendered.
The defendants in their answer denied generally the allegations of said complaint and pleaded as an affirmative defense that the action set forth therein was released and discontinued on November 28, 1956 by instruments in writing executed by plaintiff Nat Freedman for a valuable consideration paid to him by the defendants.
Annexed to and made part of the moving papers are copies of a general release and an agreement discontinuing this action executed by Freedman to the defendants on November 28, 1956 and showing as the consideration therefor the payment of $8,700 to him by the defendants.
Movants contend that the plaintiffs assert a joint claim herein and that any one of them therefore had the right to release said claim in its entirety; and that the instruments aforesaid, although executed by Freedman on his own behalf only, nevertheless operated to release the plaintiffs’ elaim and accordingly bar further prosecution of this action.
It is not disputed here that Freedman settled with the defendants during the pendency of this action, His coplaintiffs, how *3 ever, submitting no affidavits of their own in opposition to this motion, but relying entirely on the strength of the opposing affidavit of their attorney, contend that -the above-mentioned instruments are unavailing against them since it is apparent therefrom that Freedman intended to release his interest only, and not theirs, in the claim alleged and, moreover, both instruments were intended and known to be intended as a fraud on their rights herein. Said attorney, it appears, also represented Freedman in this action since its inception; and he avers in his affidavit that said settlement was negotiated behind his back and without the knowledge or consent of the coplaintiffs; and that Freedman stated to him, before this motion was made, that when he settled with the defendants he told them that he was settling his interests only and that he would testify upon the trial in the same manner as he did at the prior trial; and said attorney further averred that the jurors impaneled for the previous trial, after they had been discharged, stated to him and to the attorney for the defendants that they would have found a verdict for the plaintiffs in the full amount, and that by reason thereof, and with the view of avoiding a possible verdict against themselves, the defendants negotiated with Freedman, who was desperately in need of money, to settle this ease in the hope that by removing him as a principal party they would thereby cause the plaintiffs’ action to collapse; and that they, in settling with Freedman, were cognizant of the respective interests of his coplaintiffs in the commissions sought and knew at the time they paid him that he intended to retain for his own use the money thus received and not to account therefor to the other plaintiffs.
After this motion was argued, leave was granted to plaintiffs ’ attorney to submit affidavits by any of the coplaintiffs showing whether or not they had received any part of the settlement money, but he declined to submit Such affidavits, stating that he was content to stand on his own affidavit as being sufficient to defeat this motion.
The complaint alleges a joint undertaking by the plaintiffs in return for a single promise by the defendants to pay them commissions therefor. It is quite obvious then that a joint claim is asserted against the defendants. Such being the ease, each of the plaintiffs, as a joint promisee, had an interest in the entire claim sued upon, and by virtue thereof, and without the knowledge or consent of Ms coplaintiffs, had the power to extinguish the joint right of all and to discharge the defendants of their obligation thereon either by a release or by an accord and satisfaction. To produce that result all that he had to do *4 was to discharge the defendants from further duty to himself. {Hathaway v. Orient Ins. Co., 134 N. Y. 409; Pierson v. Hooker, 3 Johns. 68; Wells & Spring v. Evans, 20 Wend. 251; Osborn v. Martha’s Vineyard R. R. Co., 140 Mass. 549; Restatement, Contracts, § 130; 4 Corbin, Contracts, § 941; 2 Williston, Contracts [rev. ed.], §§ 325, 343; 1 C. J. S., Accord and Satisfaction, § 15.)
Although as a general rule, a demand due to several persons jointly may not be divided so as to allow the individual interest to be recovered, in separate actions, yet it may be done with the debtor’s consent. The reason is, that the contract of the debtor is to pay the debt as an entirety to his joint creditors and is therefore indivisible. The debtor, however, may, by a new contract, bind himself to account to the individual creditors for their respective interests in the demand and such contracts are susceptible of being enforced. Thus, in Carrington v. Crocker (37 N. Y. 336), the defendant was indebted to two partners for $785 awarded to them by an arbitrator. He paid one of the partners $200 in connection with said debt and obtained from him his receipt therefor which read “ Received * * # £200 IN EULL EOB MY ONE HALE INTEREST IN THE ABOVE award.” In an action brought by the other partner to recover his share of the award the defendant set up as a defense thereto the release of the claim based on the afore-mentioned receipt. It was held that the receipt indicated an intention of the parties to split the demand and that the plaintiff was accordingly entitled to recover his moiety of the award.
It is stated by the text writers that if the discharge of a joint claim by one of the obligees is made with intent to defraud his co-obligees and this fact is known to the obligor, the discharge is no defense in an action brought against him by the defrauded obligees to recover their equitable shares in the joint claim. (4 Corbin, Contracts, § 941-; 2 Williston, Contracts [rev. ed.], § 343; Restatement, Contracts, § 131, subd. [2].) Plaintiffs rely on the foregoing statement and on Rooks v. Stanaland (33 Ga. App. 8) and on Risk v. Hehl (215 Mich. 132) as author-" ities in support of their contention that they are not barred from recovering their remaining interests in the commissions allegedly due.
Turning now to the release itself to determine whether it affected the entire joint demand or only Freedman’s interest therein, I find that it is so worded as to operate against the joint demand, which, as was previously stated above, could be released simply by one joint obligee discharging the obligor *5 from further duty to himself. The release reads that Freedman, for himself, in consideration of $8,700, paid to him by the defendants, released and discharged them ‘ ‘ of and from all * * * actions, causes of action * * * debts * * * sums of money * * * contracts * * * claims and demands ’ ’ which he then had or ever had against said defendants. There is no language specifically alluding to the coplaintiffs or to the claim for commissions or to Freedman’s interest therein or otherwise indicating any intention of the parties thereto to split the joint demand herein. Nor can the present import of the release be varied by parol evidence to show that Freedman was releasing only his interest in the commissions (see Pierson v. Hooker, 3 Johns. 68, supra; Wells & Spring v. Evans, 20 Wend. 251, supra). The agreement discontinuing the action likewise makes no mention that Freedman was withdrawing or discontinuing his interest only, but reads that the cause of action in its entirety was discontinued. Accordingly, it occurs to me that these instruments are adequate to bar the maintenance of this action, unless the coplaintiff’s contention that they are fraudulent and therefore not binding on them is found to have merit.
Apropos the latter contention, I find, after an exhaustive research of cases dealing with the effect of fraudulent releases on the rights of nonconsenting joint obligees that the foregoing textual statement relied upon by the plaintiffs is acceptable as an abstraction of the law generally applied in equity actions, but that it does not necessarily reflect the rule in all jurisdictions in actions at law. Some courts have held in actions at law that a fraudulent discharge of a joint demand does not bar the nonreleasing obligee from bringing an action on the demand. The cases thus holding involved, more or less, situations where the debtor knew or should have known that the right of the releasing creditor to act required the consent and authority of his cocreditor in that the releasor was either a nominal creditor or had assigned his interest, or the release was given for a consideration moving primarily to the exclusive benefit of the releasor, or was given without any legal consideration therefor.
Thus, in Legh v. Legh (1 Bos. & Pul. 447) an obligor of a bond, after notice of its being assigned, took a release from the obligee which he pleaded as a defense to an action brought on the bond by the assignee in the name of the obligee. The release was set aside on the ground that the obligee having parted with his interest in the bond was not the real plaintiff and his act therefore prejudiced the assignee.
*6 In Mountstephen v. Brooke (1 Chit. R. 390), the plaintiffs sued as trustees for insolvent creditors on a debt for which one of them, without the consent of the other, had given the defendant a release without any consideration therefor. The release was pleaded in bar of the action, but was set aside on the ground that it was void for lack of consideration.
In Barker v. Richardson (1 Y. & J. 362) a partnership was dissolved and in pursuance thereof it was agreed between the partners that one of them was to collect all debts due the firm and notice to that effect was given to the defendant. An action was brought by the partners on a debt that the defendant owed them and while such action was pending, the partner who had no right to collect debts due the firm released the claim sued upon in consideration of the defendant’s satisfaction of a personal debt which the releasing partner owned to him. There, too, it was held that since the releasing partner had no interest in the demand and this was known to the defendant, the release in question was not binding on the partners and recovery by them was allowed.
In Gram v. Cadwell (5 Cow. 489), plaintiffs were partners and sued on a debt owed them by the defendants. Their partnership had been dissolved and it had been agreed between them that Gram would continue the business and assume all partnership debts and accounts outstanding and due until same had been settled; and that Stewart would retire from the business and all moneys invested therein by him would be repaid within a specified time. Notice of this arrangement had been given to the defendant and thereafter the debt later sued upon was released by Stewart, without the consent of Gram, in consideration of the defendant consigning to Stewart a quantity of lumber for his own use and satisfying an individual debt that Stewart owed to him. The release was pleaded in bar of the action, but was held void on the ground that Stewart had virtually assigned his interests in the partnership accounts and therefore lacked authority to execute said release; and, moreover, the consideration therefor was exclusively for the individual benefit of Stewart.
In Beatson v. Harris (60 N. H. 83) plaintiffs were partners who sued to recover the value of goods sold and delivered to the defendant. After the action had been commenced, Messer, one of the partners, secretly released the partnership claim against the defendant without receiving any consideration therefor and in violation of his agreement with his coplaintiff that the latter was to collect all accounts due to the firm, of which *7 the defendant had notice. The release, pleaded as a defense, was declared to he void for want of consideration and lack of authority on the part of Messer to execute the same.
Clark & Bosquit v. Laumann (52 Ill. App. 637) involved an action brought by partners to recover moneys due them for services rendered to the defendant. The defendant tried to negotiate a settlement with Clark but was unsuccessful. Later he deliberately brought about the intoxication of Bosquit for the purpose of inducing him to release the claim in consideration of the payment to him of a small sum of money; and Bosquit was thereby induced to release the claim in question and his release was pleaded as a defense to the action. It was held that the release was void on the ground of fraud practiced on the firm. In the same case, but in a later appeal (see 63 111. App. 132, 133), involving the same release, it was stated that the plaintiffs notified the defendant in writing that the debt he owed was not to be settled by anyone other than their attorney, and it was held on that point that the release given was void for lack of authority in Bosquit to execute same.
In Rooks v. Stanaland (33 Ga. App. 8, supra) relied upon by plaintiffs as authority in support of their position herein, it appeared that the defendant employed Rooks and another person to sell real property and promised to pay commissions therefor. Both promisees produced a seller to whom the property was sold and thereafter the defendant executed a deed to Rooks’s partner in satisfaction of the claim of both for commissions. Rooks sued to recover his share of the commissions earned and it was held that the delivery of the deed did not constitute an accord and satisfaction binding on him unless he authorized or ratified it. Said case as reported shows that the court rendered no opinion but prepared only a syllabus therefor. Not knowing fully the reasons for said ruling, I surmise that it is not unlikely that same was based on the principle that the defendant having performed his part of the agreement in a manner other than that contracted for, was put on notice that the satisfying partner required the authority and consent of the plaintiff. See Peck v. Lampkin (200 Ala. 132, 133), where the court stated: “A debtor may efficiently pay and discharge in whole or in part his debt by payment to one of two or more joint owners thereof * * *. But we appreciate that, if one of the joint obligees would accept property, other than money, in satisfaction, in whole or in part, of the jointly held demand, he, and the debtor as well, must be able to refer their- act to some express previous authorization to that owned by the *8 co-obligee, or else present a ratification of the act by the co-obligee.”
Canal Co. v. Gordon (6 Wall. [73 U. S.] 561) upholds the right of a defrauded partner to enforce a joint demand discharged Avithout his consent by his copartner. The partners were Gordon and Kinyon and they entered into a contract with the South Fork Canal Company to extend a canal that the latter had constructed. After having undertaken performance of their contract, they considered it broken when the canal company failed to make payments as it had promised and they thereupon brought an action to enforce their lien for the work done and materials furnished. While that action was pending Kinyon, without the knowledge or consent of Gordon, discharged the firm’s claim by executing a release to the canal company in consideration of $2,000 and stock in the company of the value of $3,000. Kinyon fled the country and never accounted for the consideration he received. Gordon later discontinued the action pending and instituted another action to foreclose the lien in his own name, alleging therein the giving of the aforesaid release and praying that it be set aside as fraudulent and that the canal be sold to satisfy his lien. Kinyon was not made a party to the latter action and the canal company set up as a defense thereto the release given by him. The balance due for the work done was found to be in excess of $70,000; and the United States Supreme Cohrt held that the release was a gross fraud and not binding on Gordon and that the only legal effect thereof was to sever Kinyon’s connection with the contract and to extinguish any claim he had in the litigation; and it accordingly ruled that Kinyon was not an indispensable party to the action and that Gordon was entitled to enforce the lien to the extent of the amount due for the work performed, less payments made to Kinyon.
In Reeves Lbr. Co. v. Davis (124 Ark. 143) the plaintiff Da\ds brought an action in his oavcl name to recover on a joint contract made by him and one Giles with the defendant lumber company. They were employed to cut and haul lumber for a stipulated price and after undertaking the performance of the contract the lumber company requested that they terminate said contract. Davis refused to do that; but Giles acceded to the request and released the obligor from any claims due on the joint obligation. Davis sought to recover what would have been his share of the profits if the contract had been fully performed; and it was held that he was entitled thereto because the cancellation by Giles terminated the business for which the partnership was *9 formed and was therefore without the scope of his authority and not binding on Davis unless he authorized same or gave his assent thereto.
Remington v. Eastern Ry. Co. (109 Wis. 154) recognizes the, right of a defrauded partner to recover his interest in a joint demand discharged without his knowledge or consent by his copartner for a consideration that moved exclusively to the benefit of the latter. Plaintiff and one Murphy were law partners and as such rendered services to the defendant. Murphy entered into an agreement with the defendant whereby he released a claim which the law firm had against it for services rendered in consideration of the defendant’s agreement to employ him alone as its attorney on a specified salary basis. This arrangement was concluded without the knowledge or consent of the plaintiff; and he sued the defendant to recover his share of the fees due for the services rendered and was allowed to recover same. The court there stated (p. 163): “ Settlement by one partner will not conclude the firm, if obviously unreasonable, nor if the consideration therefor, other than money, moves primarily to the personal benefit of the settling partner. In either case the opposite party is so chargeable with notice of want of authority that he is held to act subject to the actual consent or approval of the absent partners.”
Risk v. Hehl (215 Mich. 132, supra) cited and relied upon by plaintiffs in support of their contention, is not recognized as an authority permitting a joint obligee to recover in an individual action his interest in a joint claim, since it was found in that case that the plaintiff and the other broker employed to sell the defendant’s land were not partners.
The factors underlying the rulings in the above-mentioned cases are not available in the action at bar. Freedman’s right to settle is not open to question since there is no claim here of any agreement among the plaintiffs restricting him in the full exercise of his powers derived from the nature of his interest in the claim alleged. Nor can it be successfully disputed that the payment to him of $8,700 constituted a good accord and satisfaction in view of the allegations of the complaint herein and defendants’ complete denial thereof (see Simons v. Supreme Council Amer. Legion of Honor, 178 N. Y. 263; Ely v. Ely, 70 N. J. L. 31; State v. Story, 57 Miss. 738). Although it was contended by the plaintiffs that Freedman derived a special benefit from the settlement because one of the reasons therefor, as was stated in the agreement of discontinuance, was his desire to regain the friendship of the defendants and to induce them to *10 resume doing business with him, which they had refused to do during the pendency of the action, said purpose, however, could scarcely qualify as any consideration moving primarily to his benefit only, since the realization of any material benefits therefrom was more contemplative than definite or certain, especially in view of the fact that said agreement contained no reciprocal promise by the defendants that they would do business with him at any time.
The aforesaid factors, however, although available, were nonetheless disregarded in some of the cases which are now to be set forth as authorities, either holding contrariwise, or lending no support, to the rule contended for by the plaintiffs.
In Arton & Dowson v. Booth (4 B. Moore 192), the plaintiffs were partners who had dissolved their business relationship; and they had agreed between themselves that Arton was to receive and pay all debts due to and from the partnership and Dowson was not to interfere. The defendant, a debtor of the firm, was apprised of this arrangement. Arton demanded of the defendant payment of his indebtedness, but same was refused; and then an action thereon was brought in the names of both partners. Pending the trial thereof, Dowson received from the defendant payment of the debt and executed a general release to the defendant without the knowedge of Arton. This release was pleaded as a defense; and upon a motion by Arton to set the release aside as being fraudulent, it was held that same was not fraudulent per se since Dowson as one of the plaintiffs had the right to release the cause of action brought by both even though the defendant had been notified before the action was begun that Dowson had no authority to collect the debt.
In Furnival & Hardy v. Weston (7 B. Moore 356, 357), the plaintiffs, who were partners, sued the defendant to recover damages for an alleged libel. While the action was pending, plaintiff Hardy released the demand, without the knowledge or consent of his copartner and their attorneys, whom he had faithfully promised, a few days before, that he would proceed to trial with the case. On a motion to vacate the release, which had been pleaded as a defense to the action, it was held that same was not a fraud on the coplaintiff since Hardy, as one of the plaintiffs, had the right to release the action; and there being no direct evidence of fraud shown, the motion was denied.
In Phillips v. Clagett (11 M. & W. 84) plaintiffs brought an action against the defendant for illegally pledging tobacco entrusted to him and the defendant pleaded thereto a release given by one who had an interest in said tobacco but was not a party to the action. The plaintiffs did not authorize the giving *11 of the release, nor know of same until the action was started three or four years after the execution thereof. On a motion to set the release aside as fraudulent, the court held, among other things, that one partner has a clear right to receive and release a debt subject to his responsibility to his partners unless he has expressly or impliedly bargained and disposed of that right to his other partner; and that it would interfere if the act done in releasing the debt was clearly in fraud of the plaintiffs or contrary to some agreement between them and the releasor. Recognizing that in all cases where a party releases a debt due to himself and another that an injustice results to the other party, because the latter would have had the benefit of the debt, if it were recovered, the court nevertheless held that since the giving of the release was within the right of the releasor by virtue of his interest in the tobacco in question, his acting on that right was not a fraud warranting the setting aside of the release.
In Wallace v. Kelsall (7 M. & W. 264, 272), the action was brought by joint creditors against a debtor; and during the pendency thereof, the defendant compromised the claim sued upon, with one of the plaintiffs, by making a payment to him in cash and by setting off an individual debt owed by said plaintiff to him and by discontinuing an action which had been brought by the defendant for the recovery of said individual debt. The defendant pleaded an accord and satisfaction as a defense to the action. The defense was held to be good. The court stated that the releasing plaintiff was competent to settle the action and that fraud could not be presumed therefrom, but had to be shown, since it had as much right to presume that the other plaintiffs authorized the settlement as that same was fraudulent; and it therefore held that the compromise was a good accord and satisfaction and that the plaintiffs could not maintain the action further because one of them was barred therefrom and the nature of the demand required that all be joined in the action to recover thereon.
In Jones v. Tates (9 Barn. & Cr. 532) the plaintiff was an assignee of Sykes and Bury, bankrupt partners, and he brought an action against the defendants to recover the amount of bills of exchange and of partnership funds fraudulently given by Sykes to the defendants in payment of a private debt that Sykes owed them. It was found that the defendants knew that Sykes’ actions were without the authority and knowledge of Bury. The assignee having no better rights than the partners whom he represented, the question was, whether the partners, Sykes and Bury, could have recovered in a joint action against the defendants in a court of law. It was held that notwithstanding that *12 Sykes committed a fraud on Ms partner Bury, in which the defendants may have knowingly participated, said partners could not have maintained an action in law because Sykes was a necessary party thereto and could not rescind his own fraudulent acts on the ground that they were a fraud on his partner. There was laid down in that case the rule that the remedy of a defrauded partner was by a suit in equity in his own name against the defrauding partner and the person with whom the fraud was committed.
In Gates & Brown v. Pollock (5 Jones [N. C.] 344) plaintiffs sued to recover a partnership debt owed to them by the defendant. On the day that the action was commenced plaintiff Brown settled the claim with the defendant for $125 and gave a release showing that the consideration therefor was received “as a present ’ ’ to him. The release was set up as a defense; and it was held that although it appeared that the settlement had been fraudulently contrived, the action nevertheless could not be maintained since the plaintiffs had to join in the enforcement of their joint demand and Brown was barred therefrom by the release of his interest therein.
In Noyes v. New Haven, New London & Stonington R. R. Co. (30 Conn. 1) an action was brought in the names of Noyes and Eddy, as partners, to recover for work done in constructing a railroad for the defendant. When said work had been completed, Noyes informed the defendant not to settle the firm’s claim unless both partners were present, and it assented thereto. Eddy, financially destitute and otherwise irresponsible, was desirous of settling the claim and applying the proceeds realized for his own use and to defraud his partner thereof. The defendant knew of this intention and for the purpose of aiding Eddy in accomplishing same, as well as for the purpose of getting a more favorable settlement of the claim, made a secret settlement with Eddy, paying him less than the amount that was due, and took a discharge of the debt. Eddy applied some of the proceeds received in payment of some firm debts, and absconded with the remainder without accounting to his partner. Noyes never learned of the settlement until after Eddy had fled the State and he thereupon notified the defendant that he would not be bound thereby. Accordingly, he brought the action to recover the entire amount of the claim; and it was held in the lower court that the settlement was null and void as to bim and that the firm was entitled to a judgment for the full amount due less the sum applied as aforesaid by Eddy in the payment of some firm debts. On appeal, the judgment was reversed and the court ruled that the settlement may have been a fraud on *13 Noyes, but not a fraud on tbe partnership, since Eddy’s acts were within the scope of his authority; and that the release affectively barred an action on the demand; but inasmuch as the defendant was willing to be liable therefor, it was held that Noyes was entitled to recover the difference between the amount actually due the firm and the figure at which the claim was settled. There, too, the rule was laid down that the remedy of a defrauded partner is an action on the case or in equity for an accounting.
In Homer v. Wood (65 Mass. 62) it appeared that one member of a partnership settled a debt due from him individually by setting off and discharging a debt due from his creditor to the partnership. An action on the partnership debt was brought and the settlement was pleaded as an accord and satisfaction thereof. Recognizing that the act of the partner in discharging the firm claim by offsetting an individual debt owed to the defendant was a fraud on the nonconsenting partner, the court nonetheless rendered judgment for the defendant, stating, among other things, as follows, (pp. 64-65): “ The present action, being in the form ex contractu, can be maintained only by joining both partners as plaintiffs. The innocent or defrauded partner cannot recover in his own name alone. The rules of law compel him, as essential to his right of recovery, to unite with him his fraudulent partner, who has already received from the defendants full accord and satisfaction of the debt, now demanded in this action,. and given to the defendants a discharge therefor, which they now plead in bar. The suit necessarily proceeds on the ground that both plaintiffs must recover, if any recovery is had; because the contract being joint, the remedy upon it must be joint also. It presents a case, therefore, where the legal rights and remedies of parties are indissolubly blended, and cannot be separately supported and enforced.”
In Osborn v. Martha’s Vineyard R. R. Co. (140 Mass. 549, supra) plaintiff, Osborn, together with two associates, owned some iron rails which they sold to the defendant for $600. The associates settled the claim receiving in part money and in part shares of stock in the defendant corporation. Osborn claimed he was not bound by the settlement and sought to recover from the defendant his share of the indebtedness, namely, $200. The action was brought in the names of the throe joint owners and judgment was rendered for the defendant. The court stated (p. 550): “ The interest of the three plaintiffs in their joint claim against the defendant was such that each had an interest in the entire claim. One of them had not only an interest in the *14 third which might be his share, but also in the two thirds belonging to the others. It has been settled in this action that one cannot maintain an action for his share; the three must join in the suit, because each one has a joint interest in the entire amount due them, and in every part thereof. Osborn is debarred from bringing suit for his third part, because Norton and Jernegan owned that third as fully as does Osborn. Each having such an interest in the debt due, one being unable to sue, for the whole or his share thereof, it follows that each one, being interested in the entire claim, can settle it with the defendant. Each of the three, by the manner of their dealing with the defendant and with the property, has effectually authorized his partners in the contract to dispose of his interest by payment, settlement, or accord and satisfaction, and to release the defendant from its obligation under the contract. ’ ’
"While the latter case and the preceding Homer case indicated that the defendants there were not guilty of fraud, the rulings in both cases are useful to point up the technical difficulty of the coplaintiffs maintaining the action herein to recover their respective interests with Freedman out as a party. The question of fraud, however, was touched upon in Gordon v. Albert (168 Mass. 150). There two partners sued to recover for work, labor and services furnished to defendant, who pleaded as a defense a release of the claim, obtained during the pendency of the action from one of the plaintiffs, without the knowledge or consent of his coplaintiff. The consideration for the release was $27.50, which was retained by the releasor for his own use. The amount of the claim was $156 and it was found by the court that when the settlement was made the defendant knew that the partnership had. been dissolved and had been notified to settle with both partners, but that he undertook to negotiate with the releasing plaintiff because he knew that he could effect a more favorable settlement with him than with his coplaintiff. The defense was upheld, Holmes, J., stating (pp. 153-154): “ Whatever the want of authority of one partner to represent the other under such circumstances, if he has an interest he cannot be hindered from releasing his own claim, as might be the case if he had sold out to his former associate and were a mere trustee. His right to release his own interest is absolute, whatever his motive. A release disables him from maintaining an action, and the other cannot sue without him. * * * It is not necessary to consider whether, if the defendant made the settlement with fraudulent intent, the defrauded plaintiff could have relief in equity, He certainly could have none at law. ’ ’
*15 In Henry v. Mt. Pleasant Township (70 Mo. 500) it appeared that the defendant entered into a contract with plaintiff and one Bassett, both lawyers, whereby they were employed to defend certain actions brought against the defendant, and it agreed to pay them $7,000 if successful. The actions were finally determined in favor of the defendant, and it thereupon paid the promised fee to Bassett and took from him an undertaking to hold it harmless in the event the plaintiff made claim for his fee. Plaintiff brought his action to recover his share of said fee, claiming that Bassett and the defendant conspired to cheat and defraud him thereof. The defendant filed a demurrer to the complaint; and, having assumed, as it was required to do, that the allegations of the complaint were true, the court nevertheless sustained the demurrer on the ground that a contract with several persons for the payment to them of a sum of money is a joint contract with all, and that the promisees therein have a joint interest so that no one can sue alone for his proportion.
In accord with the ruling in the last-mentioned case is Anable v. McDonald Land & Min. Co. (144 Mo. App. 303). There the plaintiff sued to recover the value.of railroad cross-ties sold by him and his partner Quick pursuant to a contract entered into by them with the defendant mining company. The complaint set forth two counts. The first count alleged the employment of the partners and the delivery by them of ties of the value of $1,250; that the afore-mentioned Quick was virtually a nominal partner and was insolvent and had no means; that the burden of complying with the contract made, was on the plaintiff Anable and that Quick never furnished any of the means to fulfill said contract; that an accounting had been had between the partners and there was nothing whatever due to said Quick from the credits that were payable to said firm, but all such credits would be and should be payable to the plaintiff; that after the furnishing of the ties the partnership was dissolved and that the defendants, for the purpose of cheating and defrauding the plaintiff out of his just right to receive payment for the ties furnished, entered into an agreement whereby the defendant partner Quick gave the defendant McDonald Land & Mining Co. a release from liability on account of said ties, intending thereby to cheat and defraud the plaintiff out of the moneys due him; and that said release was given without any consideration in fact and was procured by the defendant debtor well knowing at the time that Quick had no financial interest in the contract and that Amable had furnished all the means to fulfill the contract and with the intention on the part of both the defendants *16 to cheat and defraud the plaintiff out of his just rights. On the first count judgment was demanded for the sum of $1,250.
In the second cause of action the foregoing facts were reiterated and, in addition thereto, it was alleged that the defendant Quick had no equity or right to the fund sued for, being nominally a payee in said contract, jointly with the plaintiff; and that the plaintiff requested him to bring the action jointly, but in keeping with his policy to defraud, he refused to do so; and the prayer for relief thereon was that the release be set aside in the exercise of the court’s equitable jurisdiction and that it be declared of no force or effect in barring plaintiff’s claim to said fund and that the plaintiff have judgment for the amount due, namely, $1,250. The defendants filed a general demurrer to the complaint; and, having assumed for the purposes thereof all the pleaded facts to be true, the court sustained the demurrer to the first cause of action, stating (pp. 312-313): “ The law of partnership is that each partner is a representative of the firm, and the release and satisfaction by one partner of the partnership claims binds the firm in the same manner as though all the partners were acting together * * * And one of such partners has as much right as the other to say and determine when a suit shall be brought and when an indebtedness to the partnership shall be compromised or settled without suit. Neither can sue alone for his proportion. And it is settled in this State that generally one of the two joint obligees of the contract has the power to discharge and release the joint obligation.”
The demurrer to the second count, however, was overruled, the court holding that the action pleaded thereby was not primarily one by a joint obligee to recover on a joint contract, but an action in equity in which the gravamen of the charge was fraud committed on the rights of a joint obligee; and that if the allegation of plaintiff’s complaint as to the fraudulent combination between the defendants was found to be true, then the defendant McDonald Land & Mining Co., by knowingly participating in a fraud against the partnership relation existing between plaintiff and his codefendant, Quick, thereby made itself a party to the determination of the partnership rights and was a proper party to the accounting between the partners in an equitable action.
In agreement with the Anable case is Sweet v. Morrison, decided by our Court of Appeals (103 N. Y. 235). The plaintiff there was a member of a. partner ship and he brought an action against his three copartners and a debtor of the firm to set aside, on the ground of collusion and fraud as against him, a settlement made between the defendants of a claim *17 held by the. partnership against said debtor. The trial court found that the debtor and the copartners fraudulently settled the claim and that plaintiff was entitled to an accounting thereon and to recover whatever was due him. An accounting was had and the Referee appointed therefor decided that there was an amount due plaintiff’s firm over and above the amount of the settlement; and judgment for said amount was rendered in favor of the plaintiff. On appeal to the General Term the amount recovered was reduced to one fourth thereof, that being plaintiff’s interest in the partnership. In reversing the judgment, the Court of Appeals held that the settlement by the copartners, although fraudulent, was within their authority and bound the firm and that the debtor was therefore obliged to pay the firm only the amount of the settlement actually made; and that in spite of that, it was possible for plaintiff’s copartners and the debtor to make by collusion a settlement valid as to them, but fraudulent as to the plaintiff; and that plaintiff could recover, not the debt or any portion thereof, due to the firm, for that had been discharged, but damages for the fraud practiced upon him in the process; and that the resulting damages could only be measured by his individual loss, and that loss, if it existed at all, necessarily was and could only be a diminution of his partnership share, produced by a collusive waste of partnership assets; and that the loss from said fraud could not be known until there had been a settlement of the partnership accounts; and that it was therefore error to have made an arbitrary award to plaintiff of one fourth of the difference between the amount of settlement and the actual amount of the debt owed the partnership, without a complete accounting being had. It is to be noted that the attorney for the plaintiff Sweet cited to the Court of Appeals the case of Canal Co. v. Gordon (6 Wall. [73 U. S.] 561, supra) as authority for setting aside the settlement in question and adjudging a recovery of the amount actually due on the claim; and, needless to say, said case was not followed.
In Calkins v. Smith (48 N. Y. 614, 618) it was held that where a partner and a third party conspired to defraud a partnership of its property, the fraud is not on the firm but on the individual partners who do not consent and consequently the defrauded partners may now proceed jointly to recover, but each must pursue separately to recover damages sustained in proportion to Ms interest.
In Minto v. Baur (53 Hun 636, opinion in 6 N. Y. S. 444), two partners obtained a judgment foreclosing a mechamo’s lien against the defendant and ordering the property in question to be sold and the proceeds thereof paid to the plaintiffs to the *18 extent of the judgment. While the judgment remained unexecuted, one partner settled the action for less than the amount found due to the plaintiffs, and gave a satisfaction of the lien with a consent of discontinuance of the action, all without the knowledge of the other partner or the attorney representing both plaintiffs. On a motion to set aside the satisfaction, it was held that the releasing partner had a right to settle the partnership claim for good and valuable consideration and that if the other partner had been injuriously affected by the settlement he must look to the releasing partner for his redress.
The cases collated above, as well as other cases uncovered by my research, lead me to summarize the law applicable here, to be as follows:
Obligees to a joint demand have such an unity of interest therein that none of them may sue separately to recover his interest, but all are required to join as parties in any action brought for the enforcement of the demand. The interest of an obligee, however, entitles him to release his obligor from further duty to himself on the joint obligation, without the necessity of any consent thereto from his co-obligee; and where such a release is given and the same is valid and enforcible as between the releasor and the obligor, although fraudulent as to the other obligees, the latter may not maintain an action on the demand, since the releasing obligee is barred from being a party thereto, but may, however, bring an action against the defrauding obligee and the debtor, either in equity to have them account for the fraudulent waste of their interests in the claim, or to recover damages sustained by reason of the fraud. (Sweet v. Morrison, 103 N. Y. 235, supra; cf. Schoner v. Koeppel, 237 App. Div. 860; Leonard v. Cammann, 257 App. Div. 387.)
On the other hand, where a release thus given may be set aside, as between the parties thereto, by a court of equity, as a fraud on the joint rights of the obligees, in that the releasor either lacked authority to act, or was a nominal party or creditor, and the debtor had actual or constructive notice thereof, or in that there was no valid consideration given for the release then the nonconsenting obligees may maintain an action on the joint demand, invoking, at the same time the court’s equitable jurisdiction to set said release aside as fraudulent.
Since it appears that Freedman had authority to settle the action and that he received good and valuable consideration therefor, it follows that no fraud was perpetrated on the joint rights of all the plaintiffs and that his eoplaintiffs may not maintain this action further. Although they may have a cause of action against the defendants on a differently stated com *19 plaint, the same does not bar granting of the motion on the eause pleaded herein. (Bright v. O’Neill, 3 A D 2d 728.)
Apart from the inapplicability here of the rule contended for by the coplaintiffs, I am of the opinion that they have failed to raise an issue showing Freedman and the defendants committed a fraud on them and for that reason also the motion should be granted. (Cf. Graymount v. Schlemmer, 283 App. Div. 859.) It is not enough for them to create a suspicion of fraud; they must show facts and circumstances from which fraud may be legitimately inferred. (Cf. Jaeger v. Kelley, 52 N. Y. 274.)
As the cases above indicated, settling the action without the consent of the coplaintiffs does not warrant an inference of fraud in the light of Freedman’s right to settle same. Nor did the settlement of the case without the knowledge of plaintiffs’ attorney justify an inference of fraud. A cause of action is the property of the client and not of his attorney; and the client is therefore competent to decide whether he will continue litigation or not; and the attorney cannot stand in the way of a settlement. All that the law will require is that the attorney’s lien be protected (Peri v. New York Cent. & Hudson Riv. R. R. Co., 152 N. Y. 521; Minto v. Baur, supra). The attorney for the defendants declared in his affidavit that he had nothing to do with the settlement in question but that same was negotiated by his clients; and that all he did was to prepare the instruments thereafter executed by Freedman and to advise his clients that they had to protect the lien of the attorney for the plaintiffs, which, according to his retainer, was 33Ysfo of any amount recovered; and that the sum of $2,900 was withheld from the settlement proceeds and a check in that amount was mailed to said attorney, which was retained but not cashed by him.
Inadequacy of consideration, it has been held, does not justify an inference of fraud (Jaeger v. Kelley, 52 N. Y. 274, supra). Here, however, it cannot be said that the consideration paid was inadequate, notwithstanding that plaintiffs’ attorney’s averment that the jury on the aforesaid mistrial indicated that it would have returned a verdict in favor of the plaintiffs. What that jury might have done, without first hearing all the evidence in the case, and being instructed by the court on the law, is, to be sure, no criterion of the merits of the plaintiff’s case, although it might have served the purpose of pointing up to the defendants some of the dangers that lurk in a trial by jury and spurred them on to settle the case. Moreover, the settlement for $8,700 permits as much the presumption that Freedman was moved by moral considerations as to the merits of the case, as that he was sacrificing a good cause of action to prejudice his coplain *20 tiffs. (See, Phillips v. Clagett, 11 M. & W. 84, supra; Stout, Goldsborough & Perry v. Ennis Nat. Bank, 69 Tex. 384.)
Similarly, fraud may not be inferred from the fact that defendants paid Freedman, knowing- the respective interests of said coplaintiffs. As was stated in Hill v. Breeden (53 Wyo. 125, 136-137): “ When a contract is payable to two or more parties jointly, as in the case at bar, payment may be made' to either of them. # * # If they choose to have it payable to them jointly, they ordinarily manifest thereby that they have mutual confidence in each other. The respective interests which they have therein may be equal or unequal. And so it is said that the ‘ obligor is not bound to hunt up each joint obligee and pay him his distributive share.’ * * * Of the disadvantages which this entails for the co-obligee he cannot complain, since ‘ it was his own act to enter into a contract with another who would have the right to control it. ’ ”
There remains for consideration the final claim made to support the charge of fraud, namely, that the defendant settled knowing that Freedman intended to retain the proceeds of the settlement for his own use. The Restatement of the Law of Contracts (§ 131, subd. [2]) reads: “ (2) A discharge of the promisor by an obligee in fraud of a co-obligee is inoperative to discharge the promisor’s duty to the extent of the co-obligee’s interest in the performance, if the promisor gives no value or knows, or has reason to know of the fraud.” And the following is given as an illustration thereof: “1. A, B and C are severally, jointly, or jointly and severally entitled to have D pay them $1000. The money when received by them is by their arrangement with one another, to be shared equally. D knows of this arrangement. A gives D either a release which purports to discharge A’s individual right, or a release which purports to discharge the rights of A, B and C. The consideration in either case is a discharge by D of a claim which is due him from A individually. The release operates as a satisfaction of only the one-third interest of A in the performance due from D. ’ ’ This illustration indicates that the consideration for the release is the satisfaction of a debt owed by the releasor to the debtor; and as appears from some of the cases collated above, the courts are not in agreement on such consideration being a fraud on the joint rights of all. Assuming, however, that the illustration is adaptable to a case where the obligee intends to retain for his own use the proceeds received for the satisfaction of the claim, and taking note of the dictum in Hurley v. Southern Cal. Edison Co. (183 F. 2d 125), that it is fraud on the part of the debtor if he knows or has reason to know that the releasor *21 intends to retain for Ms use the proceeds of a settlement, I cannot, however, subscribe to the view that such knowledge by the debtor is sufficient to constitute fraud, in the absence of any showing that the.releasor actually did retain said consideration for Ms own use.
All that plaintiffs’ attorney sets forth in his affidavit is that the defendants knew that Freedman intended to keep the amount of the settlement for his own use, but nowhere does he state that he actually did so. If Freedman, after the settlement, had paid any part of the money received to Ms co-obligees the latter would be deemed to have ratified the settlement and would be bound thereby. (See Matter of Levick, 2 A. 532 [Pa.].) The plaintiffs were given an opportunity to submit an affidavit showing whether or not they had received any of said money but they refused to submit same. In connection therewith, however, it should be stated that the plaintiff Kaplan died after the settlement was effected, as the papers would seem to indicate, and that his personal representatives were substituted in his place; and that the latter might therefore be in no position to give an affidavit on the matter. But an affidavit could have been submitted by the plaintiff Drubin, as well as by one Joseph Zisfein, who allegedly was in the employ of Kaplan as a real estate salesman, and who, admittedly, was one of the persons named in a written memorandum as being entitled to share in the commissions claimed, the others being Freedman, Drubin and Eolio. Kaplan, coneededly, was not actually employed by the defendants, and did nothing with respect to bringing about a sale of the premises in question, but relied entirely upon the alleged agency and acts performed by Zisfein to support the interest he claimed in the action.
Motion granted. Submit order.